# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| MARKUS N. BUCHANAN (#B-78892), AND<br>JEREMIAH LAVON CAMPBELL (#S-08726),<br><br>PLAINTIFFS,<br><br>v.<br><br>WARDEN RANDY PFISTER, ET AL.,<br><br>DEFENDANTS. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO. 17 CV 8075<br><br>JUDGE SHARON JOHNSON COLEMAN |

## MEMORANDUM OPINION AND ORDER

Defendants Critter Ridder and Funk's motion to dismiss #[29] is granted. Critter Ridder and Dennis Funk are terminated as Defendants pursuant to Fed. R. Civ. P. 12(b)(6). Defendant Garcia's motion to dismiss #[49] is likewise granted. Garcia is terminated as a Defendant, and Plaintiffs' medical claim is dismissed pursuant to Fed. R. Civ. P. 12(b)(6). Defendant Pfister's motion to dismiss #[34] is denied. Pfister must answer or otherwise plead by October 31, 2018. Plaintiffs' motion to amend complaint and case caption #[53] is denied.

## STATEMENT

Plaintiffs Markus Buchanan and Jeremiah Campbell, two Illinois state prisoners, have brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiffs claim that correctional officials and exterminators at the Stateville Correctional Center have violated Plaintiffs' constitutional rights by acting with deliberate indifference to their health and safety. More specifically, Plaintiffs allege that Defendants have failed to adequately address an infestation of skunks and groundhogs on the prison grounds. Plaintiffs additionally contend that prison health care providers failed to render adequate medical care after a skunk sprayed the inmates. This matter is before the Court for ruling on Defendants' motions to dismiss the complaint for failure to state a claim. For the reasons stated in this order, the exterminator Defendants' (Critter Ridder and Funk) motion to dismiss is granted, Warden Pfister's motion to dismiss is denied, and Nurse Garcia's motion to dismiss is granted.

## Standards on a Motion to Dismiss

It is well established that the courts must liberally construe *pro se* complaints. *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1027 (7th Cir. 2013). The courts hold *pro se* submissions to a less stringent standard than formal pleadings drafted by lawyers. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only "a

short and plain statement of the claim showing that the pleader is entitled to relief," in order to "'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)); *see also Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 667 (7th Cir. 2008).

When considering whether to dismiss a complaint for failure to state a claim upon which relief can be granted, the Court assumes all factual allegations in the complaint to be true, viewing all facts—as well as any inferences reasonably drawn therefrom—in the light most favorable to the plaintiff. *Bell Atlantic Corp.,* 550 U.S. at 563 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)); *Parish v. City of Elkhart*, 614 F.3d 677, 679 (7th Cir. 2010). A well-pleaded complaint may proceed even if it appears "that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Bell Atlantic Corp.*, 550 U.S. at 556.

Nevertheless, the factual allegations in the complaint must be enough to raise a right to relief above the speculative level. *Id.* at 555. While a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Id.* (citations omitted). The Court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 463 (7th Cir. 2010) (citing *Iqbal*, 556 U.S. at 678).

To assess whether a complaint states a plausible claim of relief, the Supreme Court articulated a two-pronged approach in which a court (1) first identifies the well-pleaded factual allegations by discarding the pleadings that are "no more than conclusions" and (2) then determines whether the remaining well-pleaded factual allegations "plausibly give rise to an entitlement of relief." *Iqbal*, 556 U.S. at 679. A plaintiff is not required to plead facts in the complaint to anticipate and defeat affirmative defenses. *Independent Trust Corp. v. Stewart Info. Serv. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). However, a plaintiff can plead himself or herself out of court by pleading facts that undermine the allegations set forth in the complaint. *See, e.g., Whitlock v. Brown*, 596 F.3d 406, 412 (7th Cir. 2010) (citations omitted) ("A judicial admission trumps evidence. This is the basis of the principle that a plaintiff can plead himself out of court.").

**Facts**

Plaintiffs Markus Buchanan and Jeremiah Campbell are inmates at the Stateville Correctional Center. Defendant Randy Pfister is Stateville's warden. Defendants Critter Ridder and its CEO, Dennis Funk, provide pest control services at Stateville. Defendant Virginia Garcia is a registered nurse at the prison.

2

Plaintiffs allege the following facts, assumed true for purposes of the motions to dismiss: A number of wild animals, particularly skunks and groundhogs, have colonized the grounds at the Stateville Correctional Center. Inmates walking the prison paths sometimes encounter the animals.

When Plaintiff Buchanan arrived at Stateville in 2012, the prison had a contract with an exterminator, "Critter (sued as 'Cridder') Ridder," to combat the then-minor infestation. Critter Ridder placed bait traps along and underneath the walkways. However, over time the animal cages progressively disappeared. The walkways at Stateville are about eight feet wide, and lined with fences on either side. Therefore, there is no means of escape if an animal threatens an inmate.

Over the past several years, the population of groundhogs has grown to such an extent that, at certain times of day, they can number 20 or more at a time on the walkways, where they search and beg for food and/or defend their territory. Skunk numbers have similarly increased. The skunks chase and fight each other on the grounds and foot paths. The skunks sometimes release their pungent odor, resulting in an unpleasant ambient smell.

Animal parents are especially aggressive in protecting their young. In addition, Plaintiffs fear risk of disease from the animals that occupy the Stateville grounds. Some of the animals have open wounds and visibly festering infections. Plaintiffs Buchanan and Campbell have found it necessary to stay indoors in the evenings in order to avoid "attack, injury, disease, and disgust." (Complaint, ¶ 33.)

The pest problem at Stateville has become so bad that the prison officers who monitor inmate movement confine themselves to certain areas where there are no groundhog or skunk holes. The officers shake their keys to keep the skunks and groundhogs at bay. Inmates, however, are required to pass through the "gauntlet" of dangerous animals. (*Id.*, ¶ 35.)

On November 27, 2016, an Officer George (not a Defendant) required Plaintiffs to walk along the "worst and most dangerous" spot of the walkway, where animal-made holes "saturate" both sides of the walkway. (*Id.*, ¶ 36.) At one point, Buchanan and Campbell were ordered to stand where there were four or five holes directly at their feet, as well as twenty or so holes nearby. As the inmate line began to move, a skunk suddenly emerged from one of the holes between the fence and walkway. The skunk attacked Plaintiffs without warning or provocation. Upon making contact with Plaintiff Buchanan, the skunk released its scent. The spray struck Buchanan along the entire length of his head and body. The liquid covered Buchanan's face, eye, and mouth. Buchanan immediately began to choke, cough, and vomit. He experienced vision loss, soreness, itching, swelling, and a rash all over his face, throat, and neck. He was also soaked in foul-smelling spray.

The skunk spray likewise hit inmate Campbell. Campbell instantly felt a burning sensation on his face, numbness in his mouth, and extreme nausea.

Officer George rushed Plaintiffs to the health care unit for treatment of their purported "injuries." (*Id.*, ¶ 41.). However, the nurses on duty, Defendants Virginia Garcia and "Tina Doe," informed the inmates that the facility had no means to provide "professional" treatment. (*Id.*). The nurses indicated that they had no access to supplies because the infirmary was locked. They further stated that they did not believe the supply room had anything to treat skunk spray anyway. The nurses nevertheless proceeded to wash Plaintiffs' faces with peroxide, hand sanitizer, soap, and water. It soon became apparent that the nurses' efforts were fruitless. The nurses therefore advised Plaintiffs to wash themselves and throw away their clothes and shoes as soon as they returned to their cellhouse.

When Plaintiffs reached their housing unit, the staff and inmates laughed and jeered at them. The officers repeated the nurses' instructions to dispose of their clothing. The sergeant and lieutenant on duty allowed Plaintiffs to take a shower, but the shower neither relieved the physical symptoms nor lessened the smell that clung to the inmates' bodies. As the cellhouse now "reek[ed]" of skunk odor, Plaintiffs' fellow prisoners continued to taunt them. (*Id.*, ¶ 41.).

The next day, Plaintiffs asked the officers on duty for permission to go back to the health care unit. Buchanan complained of blurred vision, itching, burning, "red rawness," and lingering foul body odor. (*Id.*, ¶ 45.) Campbell complained that his skin burned, that his mouth was numb, and that he remained nauseated. The officers denied Plaintiffs access to immediate medical care, instead instructing them to put in a "sick call" request.

Both Plaintiff and Campbell submitted multiple requests for sick call over the next several days. No one ever called Campbell to the health care unit or visited him in his cell. Defendant Garcia called Buchanan on December 1, 2016, while she was performing her rounds. She promised Plaintiff that he would see an eye doctor the next day. However, Plaintiff did not have an appointment with the eye doctor until December 7, 2016, six days later. The doctor prescribed a one-time application of a medicated eye solution and ordered new eyeglasses for him. Neither inmate received any further medical attention.

Since the time of the incident, Stateville administrators have taken no action whatsoever to alleviate the infestation of groundhogs and skunks on the prison property.

## Analysis

Having reviewed the parties' briefs, the Court concludes that Plaintiffs do not have a tenable federal cause of action against Critter Ridder or its CEO. Nor have Plaintiffs stated an actionable claim against Nurse Garcia. However, the Court remains satisfied that Plaintiffs have articulated a colorable claim against Stateville's warden, assuming their allegations are not exaggerated.

The Court finds that Critter Ridder and Funk cannot be sued under the Civil Rights Act because they are not state actors. In order to be liable under 42 U.S.C. § 1983, a defendant must have both (a) acted under color of state law and (b) violated a constitutional right. *See, e.g.,*

*Parker v. Franklin County Community School Corp.*, 667 F.3d 910, 925 (7th Cir. 2012). "Section 1983 was designed to discourage state actors, as well as private persons in collaboration with state officials, from using a 'badge of authority' to deprive individuals of their constitutional rights." *White v. Cooper*, 55 F. Supp. 2d 848, 858 (N.D. Ill. 1999) (quoting *Fries v. Helsper,* 146 F.3d 452, 457 (7th Cir. 1998)). Although private parties are not generally state actors, "[w]hen a private actor is implicated, the section 1983 plaintiff may nevertheless prevail if he shows sufficient state involvement in the action in question to trigger constitutional protections." *Cunningham v. Southlake Ctr. For Mental Health, Inc.*, 924 F.2d 106, 107 (7th Cir. 1991) (citing *National Collegiate Athletic Ass'n v. Tarkanian,* 488 U.S. 179, 192 (1988)).

> "Two situations exist whereby § 1983 defendants may be found to have acted under color of state law. First, "when the state has cloaked the defendants in some degree of authority—normally through employment or some other agency relationship." *Case v. Milewski,* 327 F.3d 564, 567 (7th Cir. 2003). Second, "when the defendants have conspired or acted in concert with state officials to deprive a person of his civil rights." *Id.*

*King v. Bernabei*, No. 13 CV 2745, 2015 WL 1506063, at *3 (N.D. Ill. Mar. 25, 2015). In the instant case, the Court finds no such nexus.

In *West v. Atkins*, the U.S. Supreme Court held that a private physician who provided medical care under contract with the State was a state actor. 487 U.S. 42, 54 (1988). "Respondent, as a physician employed by North Carolina to provide medical services to state prison inmates, acted under color of state law for purposes of § 1983 when undertaking his duties in treating petitioner's injury. Such conduct is fairly attributable to the State." *West*, 487 U.S. at 54). Central to the Supreme Court's analysis of state action was whether the care was provided under contract with the prison in fulfillment of the prison's obligation to provide for the inmate's basic medical needs. *Id.*; *see also Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 672 (7th Cir. 2012). The physician's "function[s] within the state system, not the precise terms of his employment, [determined] whether his actions c[ould] fairly be attributed to the State." *West,* 487 U.S. at 55-56.

Likewise, in *Rodriguez v. Plymouth Ambulance Serv.*, the U.S. Court of Appeals for the Seventh Circuit assumed that a claim against a private ambulance service for alleged deliberate indifference during an inmate's transport from prison to a hospital would be viable if, *inter alia*, transportation was provided pursuant to contract with prison system. 577 F.3d 816, 830 (7th Cir. 2009). The Court of Appeals also found that a private hospital that accepted an inmate for care pursuant to a contract with the State could be liable as a state actor. *Id.* at 831-32; *see also King v. Kramer*, 680 F.3d 1013, 1020 (7th Cir. 2012) (ruling that a county could not shield itself from liability by contracting out its duty to provide medical services).

Similarly, in *Jubeh v. Dart*, the Court of Appeals ruled that Aramark Food Service was a state actor because it had voluntarily assumed Cook County's duty to provide "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to detainees' health and well-being." No. 11 CV 3873, 2011 WL 6010267, at *2 (N.D. Ill.

Nov. 29, 2011). The court reasoned that when the State has a constitutional duty, it may delegate that function to a private party, and that the "delegation of that traditionally exclusive public function to a private [party] g[ives] rise to a finding of state action." *Id.* at *1 (quoting *West*, 487 U.S. at 55).

The instant case is distinguishable from the above-cited cases. In *West*, *Rodriguez*, and *Jubeh*, the State farmed out the provision of basic human needs to private parties. Those cases, in other words, involved essential state functions. This case does not.

The Court recognizes that incarcerated persons are entitled to confinement under humane conditions that satisfy "basic human needs." *Rice ex rel. Rice v. Correctional Medical Services*, 675 F.3d 650, 664 (7th Cir. 2012) (citations omitted). "The State must provide an inmate with a 'healthy, habitable environment.'" *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985) (citations omitted). Correctional officials violate the Constitution when they show deliberate indifference to adverse conditions that deny "the minimal civilized measure of life's necessities." *Budd v. Motley*, 711 F.3d 840, 842 (7th Cir. 2013) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). But pest control on outdoor prison grounds is too minor an aspect of day-to-day living conditions to implicate a basic human need. Furthermore, the State has not cloaked Critter Ritter or its CEO with any degree of authority. Moreover, there is no suggestion that the exterminator has conspired or acted in concert with prison officials to violate Plaintiffs' Eighth Amendment rights. Rather, Plaintiffs contend only that Critter Ridder's performance has been inadequate. The Court therefore concludes that, under the circumstances of this case, neither Critter Ridder nor Funk can fairly be characterized as a state actor. Accordingly, their motion to dismiss is granted.

However, Defendant Pfister's motion to dismiss is denied. As the Court noted in its threshold review order—which was based on the same standards as a motion to dismiss—an infestation of prison rodents may violate the Eighth Amendment, depending upon the extent, duration, and kind of infestation. *See, e.g., Bentz v. Hardy*, 638 Fed. App'x 535, 538 (7th Cir. 2016). (unpublished opinion) (citations omitted); *Thomas v. State of Ill.*, 697 F.3d 612, 614-15 (7th Cir. 2012) (a substantial infestation of roaches and vermin may implicate the Eighth Amendment); *Sain v. Wood*, 512 F.3d 886, 894 (7th Cir. 2008) (holding that "a prolonged pest infestation, specifically a significant infestation of cockroaches and mice, may be considered a deprivation" of constitutional magnitude). The invasion of rodents that Plaintiffs describe arguably violates their constitutional rights.

Furthermore, Defendant Pfister's personal involvement can be presumed under the facts alleged. At least at the pleading stage, the personal involvement of supervisory officials may be inferred where, as here, a plaintiff's claims involve "potentially systemic," rather than "clearly localized" constitutional violations. *See Smith v. Dart*, 803 F.3d 304, 310 (7th Cir. 2015) (affirming that the district court had properly imputed the involvement of senior jail officials, such as the county sheriff, on a motion to dismiss where the inmate complained of nutritionally inadequate food); *Antonelli v. Sheahan,* 81 F.3d 1422, 1428-29 (7th Cir. 1996) (same; case concerning overall conditions, including pest infestation). If the skunk and groundhog problem is

as bad as Plaintiffs describe, then Pfister may potentially be held liable for ignoring the purported risk to inmate health and safety.

To the extent Pfister seeks dismissal of Plaintiffs' medical claim against him, that request is unnecessary. The Court's initial review order directed only Defendants Garcia and "Tina Doe" to respond to Plaintiffs' allegations relating to a denial of medical care following a skunk attack. The Court did not intend to convey that Plaintiffs had asserted a medical claim against the Warden.

Finally, Defendant Pfister is correct in noting that Plaintiffs cannot recover damages from him insofar as he is sued in his official capacity. Because a suit against Pfister in his official capacity is effectively the same as a suit against the State of Illinois, he is immune from suit under 42 U.S.C. § 1983 for monetary damages in his official capacity. *See, e.g., Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011) (citing *Brown v. Budz,* 398 F.3d 904, 917-18 (7th Cir. 2005) ("To the extent [the plaintiff] seeks monetary damages from defendants acting in their official capacity, those claims ... are dismissed as they are barred by the Eleventh Amendment.")). As Plaintiffs concede, they may recover damages from Pfister only in his individual capacity. They expressly seek only declaratory and injunctive relief against Pfister in his official capacity.

Turning to Defendant Garcia, a more considered assessment of Plaintiffs' medical claims convinces the Court that they have no viable Eighth Amendment cause of action. Plaintiffs' physical distress did not rise to the level of an objectively serious medical condition, there is little more that Defendant Garcia might have done, and Plaintiffs sustained no significant, protracted injury that would have required follow-up treatment.

Deliberate indifference to a prisoner's medical needs can violate the Eighth Amendment's prohibition on cruel and unusual punishment, which is "applicable to state officials and employees by interpretation of the Fourteenth Amendment's due process clause." *Dobbey v. Mitchell-Lawshea*, 806 F.3d 938, 940 (7th Cir. 2015) (citing *Estelle v. Gamble*, 429 U.S. 97, 101, 104 (1976)). To prevail on a claim under 42 U.S.C. § 1983 for deliberate indifference, a plaintiff must establish both objective and subjective components. *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011). First, he must show that his medical need was objectively serious. *Id.* Second, "the plaintiff must show that the defendant[s] [ ] had a sufficiently culpable state of mind—that their acts or omissions [were] sufficiently harmful to evidence deliberate indifference to his serious medical needs." *Pittman ex rel. Hamilton v. Cty. of Madison*, 746 F.3d 766, 775-76 (7th Cir. 2014) (citing *Estelle*, 429 U.S. at 106) (internal quotation marks omitted). In the case at bar, Plaintiffs cannot satisfy either prong.

The effects of skunk spray were not serious enough to implicate the Eighth Amendment. A medical condition is objectively serious if failing to treat the condition "could result in further significant injury or the unnecessary and wanton infliction of pain." *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008) (internal quotation marks and citation omitted). When a prisoner has "a medical condition that significantly affects [his] daily activities" or has "chronic and substantial pain," the condition is objectively serious. *Id.* (quotation marks omitted). Generally, the pertinent question is not whether the condition itself is "serious," but whether there is evidence that it caused the plaintiff sufficient pain and suffering to require treatment. *Ayoubi v. Dart*, No.

7

17-1662, 2018 WL 1445986, at *3 (7th Cir. Mar. 23, 2018) (unpublished opinion).  A medical condition that causes pain can be serious without being life-threatening.  *Id.* (citing *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011)); *see also Lewis v. McLean*, 864 F.3d 556, 563 (7th Cir. 2017) (muscle spasms and accompanying back pain objectively serious).

The Court will accept as true Plaintiffs' claims that either one or both suffered from nausea, experienced blurred vision, vomited, developed rashes, felt a burning sensation, and went numb in some parts of their bodies.  But while the Court finds no precedent pertaining to skunk encounters, the effects of being pepper-sprayed are comparable.  The courts have routinely held that the lingering effects of being pepper-sprayed or exposed to similar chemical agents are not objectively serious medical conditions.  *See, e.g., Foote v. Houi,* No. 03 CV 50001, 2004 WL 2901039 at *2 (N.D. Ill. Dec. 14, 2004) ("While [plaintiff] experienced some obvious discomfort from coming in contact with pepper spray, he has not identified any serious medical condition that was either caused, or aggravated, by the spray"); *Rivera v. MacAdory*, No. 96 CV 4674, 1997 WL 17811, at *3 (N.D. Ill. Jan. 16, 1997) (explaining that "lingering unpleasant effects of the mace" after washing eyes and face do not amount to a "serious medical need"); *Trotter v. Kingston*, No. 05 CV 1032, 2007 WL 984089, at *6 (E.D. Wis. Mar. 27, 2007) (finding on summary judgment that "the injuries of which [plaintiff] complains in the wake of [being indirectly exposed to pepper spray]—shortness of breath, difficulty in breathing, nausea, and tightness in the chest—are, objectively speaking, relatively minor" and not constitutionally actionable); *Bonnin v. Eau Claire County,* No. 03 CV 0065, 2004 WL 67478 at *4 (W.D. Wis. Jan. 13, 2004) ("Exposure to pepper spray is not a serious medical need.").  The same reasoning applies to skunk spray.

When smoking was permitted in IDOC prisons, the Seventh Circuit Court of Appels also found that similar reactions to second-hand smoke did not violate the Constitution.  *See Oliver v. Dean*, 77 F.3d 156, 160-61 (7th Cir. 1996) (concluding at summary judgment that an asthmatic prisoner failed to demonstrate that he had a serious medical need based on evidence that his exposure to second-hand smoke aggravated his asthmatic condition causing him to suffer chest pains, difficulty in breathing, dizziness, nausea and other signs of discomfort); *see also Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999) (concluding at summary judgment that plaintiff's complaints of "breathing problems, chest pains, dizziness, sinus problems, headaches and a loss of energy" due to repeated exposure to second-hand cigarette smoke did not constitute a serious medical condition).

Plaintiffs' individual symptoms have been held not to rise to the level of an objectively serious medical need.  *See, e.g., Gayton v. McCoy,* 593 F.3d 610, 613 (7th Cir. 2010) (nurse who received report of nausea "was not faced with a serious medical need that required immediate treatment;" *id.* at 621 ("Vomiting, in and of itself, is not an uncommon result of being mildly ill, and absent other circumstances (e.g., vomiting continuously for a long period of time, having blood in one's vomit and the like), does not amount to an objectively serious medical condition"); *Miller v. Larson*, No. 17 CV 1101, 2018 WL 2684468, at *3 (S.D. Ill. June 5, 2018) (Plaintiff did not present sufficient facts to make it plausible that his persistent dizziness and nausea constituted a serious medical need); *Hutcherson v. Moore*, No. 10 CV 6215, 2013 WL 5165740, at *5 (N.D. Ill. Sept. 13, 2013) (collecting cases holding that lice, rashes, athlete's foot, and other skin conditions are not "serious"); *Turner v. Cox*, No. 12 CV 0502, 2013 WL 6183820, at *8 (W.D.

Wis. Nov. 26, 2013), *aff'd,* 569 F. App'x 463 (7th Cir. 2014) ("nausea []is not a serious medical need by itself, at least in the sense that it would require immediate treatment"). In short, while it was undoubtedly unpleasant, uncomfortable, and embarrassing to endure the effects of skunk spray, the facts do not support an inference that Plaintiffs had an objectively serious medical need.

In any event, Plaintiffs have not presented facts showing that Garcia denied them medical attention. According to Plaintiffs themselves, Garcia and her colleagues washed Plaintiffs' faces with peroxide, hand sanitizer, soap, and water, and advised them to continuing washing when they reached their cellhouse. Garcia also visited Plaintiff Buchanan in his cell and arranged for him to see an eye doctor. Those steps are not the actions of a defendant who deliberately ignored Plaintiffs' condition. *Compare Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016); *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015). Neither negligence nor medical malpractice equates with deliberate indifference, which requires a more culpable state of mind akin to criminal recklessness. *Perez,* 792 F.3d at 777.

In fact, it is unclear what more Plaintiffs believe the nurses should have done. Although the infirmary was locked, the nurses indicated that they did not believe the supply room had anything to treat skunk spray anyway. Websites instructing what one is to do when sprayed by a skunk mirror Defendant Garcia's actions. *See, e.g.,* https://www.wikihow.com/Eliminate-Skunk-Odor ("Make a homemade odor removal solution. In a medium bucket, mix together the hydrogen peroxide, baking soda, and dish detergent"); https://www.terminix.com/blog/home-garden/what-should-i-do-if-sprayed-by-skunk ("If you are unlucky enough to end up doused in a skunk's pungent 'perfume,' home remedies abound…. [D]egreasing solutions of white vinegar or hydrogen peroxide mixed with baking soda and common dishwashing liquid are more likely [than tomato juice] to effectively counteract skunk odors"); https://m.outdoorrevival.com/well-being/what-to-do-if-a-skunk-sprays-you.html ("Remember not to panic if you do get sprayed. The spray is not a poison. It is the skunk releasing its scent from glands that use a sulfur compound, creating an awful, but removable, smell"); http://www.howtocleanstuff.net/how-to-deskunk-a-human/ ("[Y]ou'll need … for your cleanup: Hydrogen peroxide (one quart bottle), Baking soda or vinegar, [and] Dish soap for hand washing").

None of the "skunk spray" websites even mentions a need for medical attention. Given the accepted procedures for dealing with skunk spray, Plaintiffs will not be able to establish that Garcia provided "blatantly inappropriate medical treatment," *Perez v. Fenoglio*, 792 F.3d 768, 777 (7th Cir. 2015) (citation omitted), or that her decision simply to wash away the spray was "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that [she] actually did not base the decision on such a judgment." *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012) (internal citations omitted). Far from acting with callous disregard to Plaintiffs' condition, Garcia seems to have followed proper protocol.

Finally, Plaintiffs' motion to amend the complaint and case caption is denied, without prejudice. A prisoner complaint is subject to the Court's required threshold review pursuant to 28 U.S.C. § 1915A. Therefore, a motion to amend must be accompanied by a proposed amended complaint setting forth all claims against all Defendants. An amended complaint must stand

complete on its own, without reference to prior pleadings. Plaintiffs may not amend their complaint by "interlineation," as they request. (R. 53, "Petition or Application to Amend," at ¶¶ 1(a), 1(b).)

Plaintiffs should carefully review this opinion prior to drafting an amended complaint naming John and Jane Doe Defendants. For example, just as Plaintiffs have no cognizable claim against Defendant Garcia, they likely have no cause of action against Nurse "Tina Doe," whom Plaintiffs have now identified as Tina Tomaras. As discussed in preceding paragraphs, the effects of skunk spray did not constitute a serious medical need. Moreover, the facts alleged did not support an inference that prison nurses were deliberately indifferent to Plaintiffs' plight. With respect to Defendant George, Plaintiffs should seek to amend only if they believe they can prove deliberate indifference to a substantial risk of serious harm, which is a "high hurdle" in Section 1983 action. *Cavalieri v. Shepard*, 321 F.3d 616, 622 (7th Cir. 2003) (quoting *Peate v. McCann*, 294 F.3d 879, 882 (7th Cir. 2002)); *Smith v. Sheahan*, No. 05 CV 1264, 2008 WL 4276221, at *3 (N.D. Ill. Sept. 16, 2008) (same). Plaintiffs should also take care to state only basic facts rather than puffing the amended complaint with legal terms and legal conclusions. But "legal arguments and case citations … are inappropriate in a complaint." *Cox v. Mackowiak*, No. 12 CV 7564, 2013 WL 3388879, at *1 (N.D. Ill. July 3, 2013); *see also* Fed. R. Civ. P. 8(a) (outlining a pleading's basic requirements). Furthermore, Plaintiffs should avoid hyperbole. Rule 11 of the Federal Rules of Civil Procedure provides for the imposition of sanctions for misrepresentations to the Court.

For the foregoing reasons, the exterminator Defendants' and Nurse Garcia's motions to dismiss are granted, but Warden Pfister's motion is denied. The Court directs the Clerk to terminate Dennis Funk, Critter Ridder, and Virginia Garcia as Defendants pursuant to Fed. R. Civ. P. 12(b)(6). Warden Pfister must answer or otherwise respond to the complaint by the above deadline. Plaintiffs' motion to amend the complaint and caption is denied without prejudice.

Date: 10/1/2018 /s/Sharon Johnson Coleman
Sharon Johnson Coleman
United States District Court Judge